**In re LANDMARK AIR FUND II, an Ohio General Partnership, Debtor.**

**LANDMARK AIR FUND II, an Ohio General Partnership, et al., Plaintiffs,**

v.

**BANCOHIO NATIONAL BANK, Defendant.**

Adv. No. 82–0297.
Bankruptcy No. 82–00536.

United States Bankruptcy Court,
N. D. Ohio, W. D.

April 20, 1982.

Henry N. Heuerman, Kenneth C. Baker, Toledo, Ohio, for plaintiffs.

Douglas W. Wright, Howard B. Hershman, Toledo, Ohio, for defendant.

### MEMORANDUM AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard upon the motion of Plaintiffs herein, Landmark Air Fund II, an Ohio General Partnership, and seven of the general partners thereof for a preliminary injunction to enjoin Defendant from undertaking any attachments, garnishments, or foreclosures in an effort to execute upon a judgment previously won by Defendant on the grounds that such an order is necessary to enable the Debtor to effect a successful reorganization under Chapter 11 of the Bankruptcy Code. Although recognizing the power of a bankruptcy court under § 105 of the Bankruptcy Code to issue any order necessary or appropriate to carry out the provisions of Title 11, in the opinion of this Court, under the circumstances of this case, Plaintiffs have failed to make the requisite showing demonstrating their entitlement to relief.

The Chapter 11 proceeding was initiated by the filing of an involuntary petition against the Debtor, a general partnership, by six of its general partners on March 17, 1982. Upon the failure of any of the remaining general partners, or any representative of the Debtor, to file an answer to the involuntary petition as permitted by 11 U.S.C. § 303(d), pursuant to 11 U.S.C. § 303(h), this Court entered an order for relief on April 14, 1982.

On March 12, 1982 the present complaint was filed in the name of the Debtor, the six general partners joining in the involuntary petition, and one of the other general partners not joining the involuntary petition. The complaint seeks injunctive relief against the anticipated action of Defendant, BancOhio National Bank, from attaching, garnishing, or foreclosing upon any of the assets of the individual Plaintiffs, general partners herein, for a period of time assertedly necessary to allow them to utilize their individual assets to effect a successful reorganization without the hindrance of the collection efforts of Defendant.

On the same date as the filing of the complaint Plaintiffs also filed motions for temporary and preliminary injunctions and, after a hearing on that day, on March 25, 1982, this Court granted Plaintiffs motion

for a temporary restraining order. On April 1, 1982 this Court heard testimony on Plaintiffs' motion for a preliminary injunction and, for good cause shown, extended the temporary restraining order entered March 25, 1982 until April 14, 1982. The testimony adduced at the hearing produced the record upon which the Court has based this decision.

The Plaintiff/general partnership was brought into existence in late 1979 partially through the efforts and on the advice of Arden Brion, a financial advisor who, for his efforts, was granted the status of a general partner without requiring his contribution of any capital funds. The remaining general partners are physicians who, on Mr. Brion's advice, joined as general partners in an effort to take advantage of an investment tax credit which they needed to offset the adverse tax consequences of their substantial personal earnings.

The primary asset of the partnership consists of a Cessna C–441 Conquest aircraft. The aircraft was purchased at a price of $1,097,000 in February of 1980 with funds provided by Defendant. The partnership and nine of the general partners were makers of a cognovit note given to Defendant to secure the purchase price and Defendant took back a security interest in the aircraft.

Shortly after the purchase of the aircraft it became apparent that the anticipated revenue produced by the leasing of the aircraft, the partnership's sole business, would not be adequate to make the monthly payments due Defendant, and other circumstances, such as rising interest rates and repair and maintenance expenditures needed to keep this aircraft airworthy, eventually caused a default in the obligation to Defendant. In October of 1980 Defendant secured a judgment against the partnership and nine of the ten general partners on the cognovit note in an amount in excess of $1,139,000. A judgment for the same amount was secured against the remaining general partner in November, 1980.

Sometime after the difficulties in keeping payments to Defendant current became apparent, the partnership attempted to obtain more favorable alternative financing of the aircraft to satisfy the obligation to Defendant. These efforts were unsuccessful and, as a result, various collection efforts have intermittently been threatened, attempted, or utilized by Defendant to satisfy their judgment including attachment of bank accounts of the individual general partners, garnishments of their wages, and the securing of judgment liens on their personal residences. An apparently satisfactory schedule of payments had been maintained on the judgment, although not without difficulty, up to February of 1982 when payments stopped. Shortly thereafter, in March of 1982 the involuntary petition, resulting in the entry of an order for relief, was filed.

The aircraft is presently in the custody of the Mercury Aviation Company but has not been flown since the end of 1981 due to the inability of the Debtor to generate sufficient funds to maintain it in an airworthy condition. The Debtor is currently attempting to sell the aircraft for an amount in excess of $850,000 which, according to the testimony adduced at hearing, is a fairly accurate approximation of its fair market value. In the meantime, notwithstanding the successful payment by the Debtor or the general partners of amounts which total nearly $500,000 from October of 1980 until February of 1982, the amount of the principal on the obligation to Defendant remains in excess of $1,000,000.

The obligation to Defendant and a much smaller sum owing to Mercury Aviation for hanger fees, and maintenance and repair costs for the aircraft are the only significant sums owing to creditors. From financial statements of certain of the general partners submitted in evidence it is apparent that the combined net worth of the individual general partners, in combination with the proceeds of the anticipated sale of the aircraft, is far in excess of any amount which might be required to satisfy the obligation to Defendant.

The Motion for preliminary injunction raises two main issues: first, the extent of the authority, if any, possessed by this

Court to enjoin collection efforts against the individual general partners during the pendency of this Chapter 11 proceeding; and secondly, presuming the authority for the issuance of such an order, the justification for its issuance under the circumstances of this case. Plaintiffs have cited certain authorities which have recognized the propriety of the issuance of such an order pursuant to the powers invested in a bankruptcy court by 11 U.S.C. § 105(a) to "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" and its predecessor, § 2(a)(15) of the Bankruptcy Act. *See First Federal Savings & Loan Association v. Petit*, 510 F.Supp. 226 (D.C.E.D.Ark.1981); *In re Larmar Estates, Inc.*, 5 B.R. 328, 6 B.C.D. 711 (Bkrtcy.E.D.N.Y.1980); *Elemar Associates v. Goldsmith*, 3 B.C.D. 958, 15 C.B.C. 574 (Bkrtcy.S.D.N.Y.1977). Defendant has based its opposition on authority which has achieved a contrary result. *See In re Aboussie Brothers Construction Co.*, 8 B.R. 302, 7 B.C.D. 309, 3 C.B.C.2d 684 (D.C. E.D.Mo.1981); *Parkview-Gem, Inc. v. Stein*, 516 F.2d 807 (8th Cir. 1975); *In re Magnus Harmonica Corp.*, 233 F.2d 803 (3rd Cir. 1956).

▋ This Court agrees with the former authorities in that, in principle, under 11 U.S.C. § 105(a) this Court possesses ample power to issue an injunction to restrain Defendant from enforcing its judgment against the individual general partners. Notwithstanding the inapplicability of the automatic stay provisions of § 362(a) of the Bankruptcy Code to an action against a co-debtor/guarantor in a Chapter 11 proceeding the power remains in this Court, upon proper application of a party in interest, to issue such an order under § 105(a) whenever "necessary or appropriate" to carry out the provisions of Title 11.

The authorities relied upon by Defendant in opposition to such an order are, in this Court's opinion, distinguishable. In *In re Aboussie Brothers Construction Co.*, 8 B.R. at 302, 7 B.C.D. at 309, 3 C.B.C.2d at 684, in denying the partnership therein, a Chapter 11 Debtor, an injunction against suits which threatened to deplete the assets of the individual partners, the court failed to consider the applicability of 11 U.S.C. § 105(a). The decisions in *Parkview-Gem, Inc. v. Stein*, 516 F.2d at 807, and *In re Magnus Harmonica Corp.*, 233 F.2d at 803, denying injunctions against the parties related to the Debtors therein was based upon the respective Courts' lack of subject matter jurisdiction over the parties or their property. This distinction has been eliminated by the expanded jurisdiction granted the new bankruptcy courts under 28 U.S.C. § 1471(b) to "all civil proceedings arising under title 11 or arising in or related to cases under title 11", *see First Federal Savings & Loan Association v. Petit*, 510 F.Supp. at 226, 227.

The only question then becomes whether the order prayed for is "necessary or appropriate" under the circumstances of this case. This question is perhaps most properly determined by applying the usual rules relating to the grant or denial of injunctions. *See In re Larmar Estates, Inc.*, 5 B.R. 328, 331, 6 B.C.D. at 711, 713. (Bkrtcy. E.D.N.Y.1980); *See also* 2 Collier on Bankruptcy ¶ 105.02 at 105–9 (15th Ed. 1981).

As previously determined by this Court in *Toledo Trust Company v. Poole*, 15 B.R. 422, 427 (Bkrtcy.N.D.Ohio 1981) the following four factors have been established in this Circuit as considerations in the decision whether to grant or deny a preliminary injunction:

1. Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the plaintiffs have shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others;

4. Whether the public interest would be served by issuing a preliminary injunction.

A consideration of these factors leads the Court to the conclusion that Plaintiffs have failed to demonstrate their entitlement to relief.

The first factor, whether. Plaintiffs have shown a strong or substantial likelihood or probability of success on the merits, may be said to refer to the probability of the Debtor effecting a successful plan of reorganization. *See In re Larmar Estates, Inc.*, 5 B.R. at 331, 6 B.C.D. at 713. From the evidence adduced thus far, it is apparent to this Court that no bona fide reorganization is intended or feasible in this case. The only business of the partnership is the leasing of the Cessna aircraft, its only major asset. The aircraft is currently not in an airworthy condition and the partnership, absent an infusion of outside capital, is not financially capable of making it so. In addition, no reorganization, in the sense of an attempt to revitalize the business as an operating entity is even contemplated in this case. The express purpose for filing this Chapter 11 proceeding is to "buy time" to allow the partnership sufficient opportunity to negotiate the most favorable terms possible for the sale of the aircraft in question. The partnership as an entity is simply intending to liquidate its only asset and to pay out of the proceeds the most that can be paid prior to looking to the assets of the individual partners to satisfy any deficiency.

Further, in this Court's opinion, there is no irreparable injury to either the Debtor or the individual partners. The satisfaction of the obligation owing the Defendant by means of exhausting the assets of one or more of the general partners would enhance the financial position of the partnership as an entity. Any individual general partner held liable would look to the remaining general partners for contribution. In the meantime, the partnership would have ample opportunity to sell the aircraft at the best possible price and further minimize the burden on any particular partner.

Consideration of the third factor, whether the issuance of a preliminary injunction would cause substantial harm to others, seems to favor neither side in this controversy. It should be noted, however, that the issuance of an injunction, to enhance the possibility for a successful reorganization, would not inure to the benefit of any creditors of the Debtor outside this proceeding, with the possible exception of Mercury Aviation. The only creditors of the Debtor are the Defendant and Mercury Aviation. Clearly, an injunction, an extraordinary remedy, ought not to be issued unless the Debtor can demonstrate resultant prejudice to an effective reorganization, and to its creditors.

Last of all, it is questionable, given the above circumstances, that the public interest could best be served by the issuance of the injunction prayed for. Certainly, a reorganization designed to breath fresh life into the Debtor and enable it to continue its existence as a viable business entity and maximize the dividend to creditors is undeniably in the public interest. The issuance of an order in this case however, presents a far different picture. The Debtor desires to liquidate its business under terms most favorable to its general partners. The only creditors, irregardless of the grant or denial of the injunction, will be fully satisfied in any event. The partners chose to organize their business for the primary purpose of utilizing an investment tax credit that otherwise would be unavailable to them if they chose to incorporate. The issuance of an injunction to protect them from the risk of liability they voluntarily assumed, it would seem, would promote the use of a tax avoidance scheme of questionable benefit to the public which, to the contrary, would hinder the efforts of bona fide creditors to collect their just due.

For the foregoing reasons, it is hereby,

ORDERED that Plaintiffs' motion for a preliminary injunction be, and hereby is denied.