In re NORTHLAKE BUILDING PARTNERS, an Illinois limited partnership, Debtor.

NORTHLAKE BUILDING PARTNERS, an Illinois limited partnership, Petitioner,

v.

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Respondent.

Bankruptcy No. 81 B 12214.
Adv. Nos. 81 A 3988, 81 A 4165.

United States Bankruptcy Court, N.D. Illinois, E.D.

June 20, 1984.

Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for debtors.

Rosenthal & Schanfield, Chicago, Ill., for respondent.

MEMORANDUM OPINION
AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard upon the application of NORTHLAKE BUILD-

ING PARTNERS, an Illinois limited partnership [Debtor], represented by SCHWARTZ, COOPER, KOLB & GAYNOR, CHTD., for the entry of preliminary injunctive relief pursuant to Section 105(a) of the Bankruptcy Code, against NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY [Respondent], represented by ROSENTHAL & SCHANFIELD, and also upon the motion of Respondent for the entry of judgment on Count II of its complaint against Debtor and KENNETH NASLUND [Naslund], the general partner of Debtor; and the Court having reviewed the pleadings filed in this cause, and having on March 1, 1984, afforded the parties an opportunity for hearing, and being fully advised in the premises;

The Court Finds:

1. Debtor is involved in the operation of the Northlake Hotel, located in Northlake, Illinois. The hotel provides lodging, meals, recreation and minor nursing care to approximately 260 elderly persons. Portions of the facility are also used for special events, such as bingo, conventions and the like, through which Debtor derives a substantial amount of business and income. Naslund is the sole general partner of Debtor, and he is also responsible for the day-to-day operations of the hotel.

2. Prior to the institution of these bankruptcy proceedings, Debtor and its partners were involved in a civil action instituted by Respondent in the United States District Court for the Northern District of Illinois, Eastern Division, docket number 81 C 2913, in which Respondent sought to obtain a judgment in excess of Three Million ($3,000,000) Dollars against Debtor for breach of a mortgage agreement and also, *inter alia*, to collect on the personal guarantee made by Naslund upon that same partnership debt. The underlying debt was secured by a mortgage interest in Debtor's sole major asset: the Northlake Hotel. Following Debtor's institution of these voluntary Chapter 11 bankruptcy proceedings, Debtor, on December 21, 1981, removed the above cause of action to this Court.

3. The Court entered an Order on June 22, 1982, which denied Respondent's motion to remand that cause of action to the district court. Also on that date, this Court entered an Order which denied Respondent's motion to lift the stay to permit Respondent to pursue its foreclosure action against Debtor and its partners. The basis for that Order was that Debtor had a substantial equity in the hotel property, and that Respondent's secured interest in the hotel premises was adequately protected, inasmuch as Respondent had received substantial payments from Debtor during the course of these bankruptcy proceedings.

Subsequently, Respondent filed a motion requesting this Court to delineate the scope of the automatic stay, to the end that Respondent might proceed to judgment on its complaint against Kenneth Naslund, individually, upon his personal guarantee of Debtor's mortgage debt. See 25 B.R. 543. This Court entered an Order on June 2, 1983, which denied Respondent's motion. Respondent appealed.

On August 23, 1983, the United States District Court entered an order which remanded the cause to this Court for determination, *inter alia*, of Debtor's entitlement to the entry of injunctive relief which would restrain respondent from pursuing its claim against Naslund. Debtor did subsequently file the present application for the entry of injunctive relief, which matter is now before this Court for decision.

4. Naslund testified in support of Debtor's application for injunctive relief at the March 1, 1984, hearing. Aside from being Debtor's sole general partner, Naslund is responsible for the management of Debtor's hotel. For his services, Naslund receives an Eleven Thousand ($11,000) Dollar per-month fee. However, $5,500—$5,700 of this amount is used to pay the salaries of key management personnel employed by Naslund, and other funds are used to purchase certain supplies used in the management of the hotel. Naslund, himself, nets only $500 to $600 per week from Debtor for his management services.

5. Debtor currently owes Naslund approximately One Million Five Hundred Thousand ($1,500,000) Dollars. Naslund also owns a partial interest in a condominium unit in which he resides with his wife. Naslund has no other assets of substantial value.

6. It is clear that Naslund devotes a great deal of time to the management of the Northlake Hotel. That facility, which employs approximately 60 persons, is now operating at a profit. Naslund testified that if Respondent were permitted to proceed with its cause of action against him personally, he would find it difficult to continue to execute his management responsibilities respecting the hotel.

The Court Concludes and Further Finds:

■ 1. The Court would first observe that it has authority, pursuant to Section 105(a) of the Bankruptcy Code (11 U.S.C.A. § 105(a) (1979)), to issue an injunction which would restrain Respondent from pursuing its cause of action against Kenneth Naslund, Debtor's general partner. *Landmark Air Fund II v. Bancohio National Bank (In re Landmark Air Fund II)*, 19 B.R. 556, 559 (Bankr.N.D.Ohio 1982). Respondent does not dispute the Court's power to issue injunctive relief in this cause, but instead argues that Debtor is not entitled to such relief on the merits. The Court does not agree.

■ 2. The standard for granting a preliminary injunction is well settled in this district. The Debtor must show (1) it has at least a reasonable likelihood of success on the merits, (2) it has no adequate remedy at law and will otherwise be irreparably harmed, (3) the threatened injury to it outweighs the threatened harm the preliminary injunction may cause the Respondent, and (4) the granting of the preliminary injunction will not disserve the public interest. *Machlett Laboratories, Inc. v. Techny Industries, Inc.*, 665 F.2d 795, 796–97 (7th Cir.1981).

3. In the context of bankruptcy proceedings, the first factor noted above (reasonable probability of success on the mer-

its) has been held to pertain to the debtor's prospects for successful reorganization. *See e.g. Lahman Manufacturing Co., Inc. v. First National Bank of Aberdeen (In re Lahman Manufacturing Co., Inc.)*, 33 B.R. 681, 684–85 (Bankr.D.S.D.1983). In the instant case, Debtor has filed a plan of reorganization, which is currently awaiting confirmation. In view of the Debtor's current ability to earn a profit, as testified to by Naslund at the March 1, 1984, hearing, the Court would conclude that Debtor has demonstrated that it has a reasonable probability of success on the merits for purposes of the instant motion.

4. It further appears that Debtor has established the second ground for injunctive relief: the prospect of irreparable harm if relief is not granted, and the want of an adequate remedy of law. Naslund, as has been shown, is intimately connected with the management of Debtor's business and, therefore, with the Debtor's ability to emerge from these bankruptcy proceedings as a going concern. Naslund testified that if he is required to account for his personal guarantee of Debtor's three million ($3,000,000) dollar mortgage debt to Respondent, his ability to execute management responsibilities on behalf of Debtor would be impaired. Respondent asserts that Naslund may file a personal bankruptcy and thereby avoid the consequences of his personal guarantee. Respondent concludes, on this basis, that Debtor has an adequate remedy at law which should preclude the entry of injunctive relief.

5. Nonetheless, it is Debtor, not Naslund, who now applies for injunctive relief respecting the Respondent. Debtor cannot force Naslund to declare bankruptcy; nor can it force him to continue to manage its hotel. *Debtor* has no adequate remedy at law with reference to Respondent's proposed course of action, and it would be irreparably harmed if it were to lose what appears of record to be a competent manager.

6. In contrast, the benefit which Respondent might obtain if it is permitted to proceed against Naslund appears to be min-

imal, if existent at all. The only asset owned by Naslund which might be sold to satisfy his guarantee to Respondent, is Naslund's part-ownership interest in the condominium unit in which he and his wife reside. The value of that part-ownership interest does not appear of record. Nonetheless, after homestead interests are deducted, and after allowance is made for Naslund's other debts which aggregate $295,000, the proceeds which may be realized from the sale of the unit would surely fall far short of satisfying Respondent's three million dollar claim.

7. Naslund testified that his partnership interest in his "Engineers Collaborative" business was valueless. His partnership interest in Debtor is, of course, of little value while Debtor remains in bankruptcy. Naslund's salary is not substantial, and the monies once contained in his money market fund were withdrawn, and loaned to Debtor.

8. The Court fails to see how Respondent's actual financial position with respect to its mortgage interest would materially improve should the Court permit it to proceed against Naslund on his personal guarantee. Debtor, on the other hand, has adequately shown that the threatened injury which would accrue from Respondent's proposed course of conduct far outweighs the harm, if any, which the grant of the application for a preliminary injunction may cause to Respondent.

9. The final factor of the Court's analysis concerns the possible effect of the entry of injunctive relief upon the public interest. On this point, it is clear that the public interest will be best served if Debtor, with the assistance of Naslund, continues to work as they have toward the eventual goal of successful reorganization. Sixty persons employed by Debtor will continue to have jobs. Two hundred sixty elderly people will have a place to live. The hotel premises will continue to form part of the community's tax base.

Apart from the possible costs which Debtor might encounter if it is required to replace its current management the Court does not consider it to be in the best interests of the estate to permit Debtor's management to be disrupted at this stage of the proceedings.

10. The Court would also note that in the context of a *partnership* bankruptcy, the courts are particularly concerned with reference to the actions which a partnership creditor might commence against individual partners. This is so, because all creditors of a partnership may generally look toward the assets of the individual general partners to satisfy the partnership debt. Inasmuch as a major policy of the Bankruptcy Code is to prevent a destructive "race for assets" by the Debtor's creditors, courts have held that where, as here, the partnership is proceeding to reorganize its affairs, injunctive relief may properly issue to prevent a particular creditor from proceeding against the general partners individually. *Old Orchard Investment Co. v. A.D.I. Distributors (In re Old Orchard Investment Co.)*, 31 B.R. 599, 602–603 (W.D.Mich.1983). For this reason, and for the reasons noted above, the Court concludes that Debtor's application for a preliminary injunction should be allowed.

11. Respondent also moved the Court, on October 3, 1983, for entry of judgment upon its complaint against Naslund, individually, with the stipulation that any execution of such judgment would be limited to Naslund's non-partnership assets. However, as noted above, Naslund has few "non-partnership" assets with which he could satisfy a three-million dollar judgment. Out of fairness to the other partnership creditors, *see Old Orchard Investment Co. v. A.D.I. Distributors (In re Old Orchard Investment Co.)*, 31 B.R. 599, 602–603 (W.D.Mich.1983), and in consideration of the other individuals, noted above, who might be materially harmed should Debtor's attempt to reorganize fail, the Court concludes that Respondent's motion should be denied [1].

---

1. This Order is entered pursuant to clause D(2)    of the General Order adopted on December 20,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the application of NORTHLAKE BUILDING PARTNERS, Debtor, for a preliminary injunction restraining NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY from proceeding against KENNETH NASLUND upon his personal guarantee respecting certain partnership debt be, and the same is hereby, allowed; provided, that NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY is granted leave to apply to this Court to dissolve the preliminary injunction entered herein should Debtor's reorganization proceedings abate.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the motion of NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY for the entry of judgment upon Count II of its complaint, which was originally docketed in the district court as number 81 C 2913, be, and the same is hereby, denied.

1982, by the Circuit Council presiding in this judicial district, inasmuch as this Order does not dispose of the merits of Respondent's state-law claim against Naslund, and also because the relief granted is in the nature of automatic stay litigation.