In re John J. GILECE, Jr., Debtor.

CROWN OIL & WAX COMPANY OF DELAWARE, Plaintiff,

v.

John J. GILECE, Jr., Defendant.

Bankruptcy No. 79–02202.

Adversary No. 79–0026.

United States Bankruptcy Court, E. D. Pennsylvania.

Jan. 11, 1980.

James L. Lekin, Baltimore, Md., for debtor.

Jon A. Baughman, of Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Crown Oil & Wax Co. of Delaware.

John J. Gilece, Jr., Frederick, Md., pro se.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.[1]

On November 30, 1979, the debtor, John J. Gilece, Jr., filed a petition seeking relief under Chapter 11 of the Bankruptcy Code, codified as Title 11 of the United States Code. Mr. Gilece has served as President and a member of the board of directors of

plaintiff, Crown Oil & Wax Company of Delaware ("Crown"), a corporation for which a plan was confirmed by this Court on November 30, 1976 under Chapter XI of the Bankruptcy Act.[2] Crown now seeks a permanent injunction against the debtor which would, *inter alia*, preclude Mr. Gilece from further action as President of Crown, since it is Crown's contention that Mr. Gilece has been duly removed from his position as Crown's President.[3]

This Court has jurisdiction over the parties and subject matter in this proceeding by virtue of 28 U.S.C. § 1471, made applicable by the Bankruptcy Reform Act of 1978.[4]

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752.

2. Crown's own Chapter XI case was recently reopened by this Court, *sua sponte*, by Order dated November 28, 1979, to consider "the question of reopening generally and in particular, the validity of the mortgage or mortgages held by [Farmers and Mechanics National Bank] on real estate owned by Crown." Bench Opinion, formally adopted by this Court as its findings of fact and conclusions of law on December 11, 1979. The hearing to consider these questions, with notice to all creditors, shall be held at 10:00 o'clock A.M., February 13, 1980 in the Bankruptcy Court in Reading, Pennsylvania.

3. During the hearing on Crown's motion and complaint for a preliminary injunction against the debtor, the Court, with the consent of the parties, ordered that the trial of the action on the merits be consolidated with the hearing on the motion for preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to the present proceeding by Bankruptcy Rule 765.

4. Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, Title IV, § 405, 92 Stat. 2549, 2685 (1978) (§ 405 makes applicable, during the "transition" period, the amendments made to Title 28 of the United States Code relating to jurisdiction and venue by the Bankruptcy Reform Act. Those provisions of Title 28 pertinent to the case at bar are:
§ 1471. Jurisdiction
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not

exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.
(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever *[sic]* located, of the debtor, as of the commencement of such case.
§ 1472. Venue of cases under title 11
Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—
(1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period than the domicile, residence, principal place of business, in the United States, or principle *[sic]* assets, in the United States, of such person were located in any other district; or
(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.
§ 1473. Venue of proceedings arising under or related to cases under title 11
(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending. . . .

■ The plaintiff is a Delaware corporation with its principal place of business in Maryland. The defendant is an individual residing in Maryland. Nonetheless, the debtor's Chapter 11 petition for relief was properly filed in this district pursuant to 28 U.S.C. § 1472(2) and 11 U.S.C. § 101(2)(B), since an "affiliate" of the debtor, Crown, currently has a reopened case pending in this district.

Plaintiff's complaint for injunction is therefore properly before this Court by virtue of 28 U.S.C. § 1473(a). Moreover, no objection has been raised on the grounds of improper venue.

The facts in this somewhat complex case are as follows: Crown's board of directors presently consists of three persons: the debtor, Gilece, who now owns a 50% beneficial interest in the capital stock of Crown; Guy W. Nusz, Chairman of the board of directors of both Crown and Farmers and Mechanics National Bank ("F&M"); and Richard A. Dent, Senior Vice President of F&M and who now holds himself out as Crown's new president.

■ F&M, at trial and at the time of Crown's Chapter XI confirmation, purported to be a creditor of Crown, secured by a certain real estate mortgage or mortgages. In exchange for funding Crown's Chapter XI plan, F&M obtained, by a document entitled "Loan, Security, and Irrevocable Proxy Agreements" (Exhibit P–1), and a document entitled "Stock Assignment Agreement" (Exhibit P–6), what amounted to full voting control over all the shares of Crown. We cannot conclude, based on the evidence presented at trial and in the parties' memoranda, that these documents, effectively giving F&M control over Crown, were anything other than voluntary, arms-length agreements between the debtor and F&M. For purposes of *this* proceeding for an injunction against the debtor, we conclude that these agreements cannot be used to invalidate any subsequent action of Crown's board of directors, of which debtor is a member.[5]

The issues presented for resolution, then, are these: Does the stay imposed by 11 U.S.C. § 362 prevent Crown, acting through its board of directors, from effectuating the termination of the debtor's employment as Crown's president? In the alternative, should this Court, under its general equitable powers, deny the relief sought by plaintiff? Finally, are there any other impediments facing Crown's board of directors in their removal of debtor as its president?

■ Beginning with the last question first, we note that much debate between the parties has focused on whether, under applicable state law, Messrs. Nusz and Dent

Section 101 of Title 11 provides, in pertinent part:

§ 101. Definitions
In this title—

.    .    .    .    .

(2) "affiliate" means—
(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—
(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—
(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or
(D) entity that operates the business or all or substantially all of the property of the debtor under a lease or operating agreement .   .  .

5. Whether the circumstances surrounding the execution of these agreements should or could result in the revocation of the confirmation of Crown's Chapter XI plan is an open question for later decision by this Court. *See* footnote 2, *supra.*

by their actions as directors of Crown have duly terminated the employment (not the directorship) of John Gilece. We find that this question is conclusively resolved in favor of Crown and against Mr. Gilece by virtue of a unanimous consent by the holder of all voting rights of all of Crown's outstanding capital stock, F&M. This consent, amending Crown's by-laws by officially setting the number of Crown directors at three (Exhibit P-4), combined with the actions taken by Crown's board at a meeting duly constituted and held on November 30, 1979, the minutes from which were introduced at trial as Exhibit P-5, operated to terminate Mr. Gilece's employment as President of Crown. This termination was made properly, according to state law and Crown's own by-laws.

■ Second, we conclude that the automatic stay of § 362 does not preclude the termination of the debtor's employment by Crown. The debtor vigorously asserted at trial and in his memorandum that Crown's board of directors, i. e., Messrs. Nusz and Dent, are in fact acting for F&M in its capacity as a creditor of Crown, not as disinterested Crown directors. It follows, argues the debtor, that this creditor action is subject to the stay of § 362.

■ The stay imposed by § 362 is indeed designed to preclude certain creditor actions. It is designed, however, to halt those actions by creditors to collect debts and thereby preserve the property of the estate. (See 11 U.S.C. § 541). Even if we were to assume that the Crown directors/F&M officers were acting as creditors—and we assume no such thing—the action of terminating the debtor's employment is not that type of creditor action contemplated by § 362. See H.Rep.No.95–595, 95th Cong., 1st Sess. 340–344 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; 124 *Cong.Rec.* H11092–11093 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 124 *Cong.Rec.* S17409–17410 (daily ed. Oct. 6, 1978) (remarks of Senator DeConcini).

■ Third, it must be determined whether the Court should stay, under 11 U.S.C. § 105 or under the Court's general equitable powers, the termination of debtor's employ-

ment. We conclude that there is no basis for staying the debtor's ouster as Crown president. The debtor contends that he is the only one in a position to act competently, independently and in Crown's best interest. Even if that were the case, it is not for this Court, on the record now before it, to make what is essentially a business judgment ordinarily reserved for a corporation's board of directors. Furthermore, although the debtor asks that termination of his employment be stayed, the practical effect of any such stay would be to force Crown to continue the debtor's employment. Traditionally, courts have been reluctant to force employers to accept the personal services of a particular employee. If Mr. Gilece believes that his employment was terminated wrongfully, his recourse is to an action for damages. Moreover, the debtor has failed to demonstrate that termination of his employment will in any way detrimentally affect the administration of his Chapter 11 estate or any property thereof.

After an examination of the entire record before this Court, including the testimony of the witnesses of both parties and the pleadings, memoranda and exhibits, we conclude that the debtor, John J. Gilece, Jr., is no longer president of Crown and that should he be permitted to continue acting as president, contrary to the express termination of his employment by Crown, Crown will suffer irreparable harm as a direct result thereof. We further conclude that Crown has no adequate remedy at law in this regard. Consequently, the debtor will be enjoined from so acting, although nothing in this opinion shall affect his position as a director of Crown.

## ORDER

AND NOW, this 11th day of January, 1980, after hearing and in accordance with the foregoing Opinion, it is hereby ORDERED:

1. That Defendant John J. Gilece, Jr.

a) remove his personal articles from the premises of Crown at 306 East Patrick Street, Frederick, Maryland within seventy-two hours of the date of receipt of the order of this Court;

b) furnish to the Secretary of Crown, within seventy-two hours of the date of receipt of the order of this Court, an address to which notices of meetings of the Board of Directors of Crown can be sent;

c) deliver to Crown, within seventy-two hours of the date of receipt of the order of this Court, all assets, books, records and other properties of Crown which may be in the possession or control of the defendant;

d) cooperate with Crown in connection with an examination of its books and records by an independent certified public accountant selected by Crown's Board of Directors; and

2. That Defendant is permanently enjoined from

a) acting in the name of or on behalf of Crown as its president;

b) interfering with Richard A. Dent in his service as President of Crown; and from

c) destroying, removing, taking possession of, or otherwise exercising control over any assets, books, records or other properties of Crown.

Nothing in this Order shall be construed to restrict John J. Gilece, Jr. in his capacity as a member of the board of directors of Crown.