### In re GARDEN INN STEAK HOUSE, INC., Debtor.

**BENNETT ENTERPRISES, INC., et al., Plaintiffs,**

v.

**Anthony J. CELEBREZZE, Jr., Attorney General of Ohio, et al., Defendants.**

Bankruptcy No. 86–0025.
Related Case: 81–01688.

United States Bankruptcy Court, N.D. Ohio, W.D.

July 10, 1986.

Michael N. Vaporis, Toledo, Ohio, for plaintiffs.

Mark A. Engel, Columbus, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion To Dismiss filed by the Defendant in the above entitled adversary action. The Court conducted a Pre-Trial conference in this case, at which the Court afforded the parties the opportunity to file any arguments they wished the Court to consider relative to its jurisdiction in this case. The parties have filed such arguments and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that the Motion To Dismiss should be granted.

### FACTS

The facts in this case do not appear to be in serious dispute. The Plaintiffs in this action are the successor corporation (hereinafter "Bennett, Inc.") to the Debtor-In-Possession in the underlying Chapter 11 proceeding, and the principal stockholders of the Debtor-In-Possession, Steven and Teresa Bennett. The Defendant is the agency of the State of Ohio charged with the responsibility of enforcing the State's sales and use taxes. Prior to the formation of the Debtor-In-Possession corporation in January of 1981, the business known as the Garden Inn Steak House was operated by Cangiamilla, Inc. It appears that at the time the Debtor-In-Possession acquired Cangiamilla, Inc.'s business, Cangiamilla, Inc. was indebted to the Defendant for unpaid sales taxes. During the months following the Debtor-In-Possession's acquisition of the business, the Debtor-In-Possession failed to file the appropriate sales tax returns with the Defendant. However, on or about the time the Debtor-In-Possession filed its petition with this Court, it also filed tax returns for the time during which it owned the business. In doing so, it also appears that the Debtor-In-Possession used the name and vendor license number of

Cangiamilla, Inc. Therefore, there were no records to reflect that the Debtor-In-Possession had filed such returns.

On August 17, 1981, the Debtor-In-Possession filed its voluntary Chapter 11 Petition with this Court. In the schedules filed with that Petition, the Defendant is listed as a creditor for unpaid sales taxes. During the course of that Chapter 11 proceeding, it appears as though the Debtor-In-Possession and the Defendant were able to resolve the disputed sales tax liability as to all the entities in question. On June 4, 1982, this Court entered an Order confirming the Debtor-In-Possession's Plan of Reorganization. As a part of that Plan, the Debtor-In-Possession proposed to sell the assets of the business to the Plaintiff-corporation, and to pay in full the claims of its priority creditors, including the Defendant. It also appears that the Debtor-In-Possession and the Bennett, Inc. entered into an agreement, whereby they would both hold the Bennetts harmless for any tax liabilities incurred by the Debtor-In-Possession. Although it appears that at the time of confirmation the Debtor-In-Possession and the Defendant had resolved the extent and amount of the outstanding tax liability, the certainty of that resolution is not made clear from the documents currently before the Court. Nevertheless, the assets of the business were sold to Bennett, Inc., and the proceeds were distributed as provided for in the Plan of Reorganization.

At some time in 1984, the Defendant contacted the Debtor-In-Possession's accountant in an effort to obtain tax returns for the period of the Debtor-In-Possession's operation which preceded the filing of the Petition. This inquiry was made as a result of the fact that the Defendant had no record of a return in the Debtor-In-Possession's name for that period. Based upon its review of the returns for that period which had been erroneously filed in the name of Cangiamilla, the Defendant determined that a significantly greater amount was owed for that period than was originally estimated. It appears that an estimated amount for the period was used as the basis for resolving the dispute as to the Debtor-In-Possession's liability. In light of that determination, the Defendant issued an assessment for those taxes against Steven and Teresa Bennett. This assessment was made pursuant to the provisions of Ohio Revised Code Section 5739.33. That Section renders liable for any taxes of a corporation the officers or employees of the corporation charged with the responsibility of complying with the entity's tax obligations.

In response to that assessment, the Plaintiffs filed this action, wherein they seek an injunction against the Defendant from further pursuing the alleged deficiencies. The Motion presently before the Court seeks to have this action dismissed. The basis for this Motion addresses the question of whether or not this Court has any jurisdictional authority to enjoin the Defendant from pursuing obligations owed by parties not presently before the Court. Specifically, the Defendant argues that because Steven and Teresa Bennett are not presently under the jurisdiction of this Court, there is no basis upon which this Court can enjoin it from enforcing the Bennetts' statutory liability. The Plaintiff's oppose the Motion, arguing that if the Defendant is permitted to pursue its assessment, it will require an adjustment of the amount paid to all other creditors under the Plan. This adjustment would be required, inasmuch as the Bennetts would then be entitled to assert a claim against the Debtor-In-Possession for their contribution to the Debtor-In-Possession's tax liability. As a result, they would then be entitled to share with all other unsecured creditors the proceeds already paid. The Plaintiffs further argue that inasmuch as this proceeding is substantially related to the Title 11 proceeding, and since it involves the Court's authority to determine taxes pursuant to 11 U.S.C. Section 505, this Court has jurisdiction over the Defendant for purposes of this action.

## LAW

The provisions of 28 U.S.C. Section 1471(b) state in pertinent part:

(b) ... The District Courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to causes under title 11.

Although this provision was repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (1984), it was in effect at the time the underlying Chapter 11 Petition was filed. Accordingly, it must be considered applicable to the present proceeding. *See,* P.L. 98–353, Section 553(a).

■ Under this provision, any matter which arises in or is related to a case under Title 11 falls under the jurisdiction of the District Court. As indicated by the Plaintiffs, the determination as to whether a matter is a related proceeding involves the question of whether the outcome of the matter has the potential to alter the debtor's rights, liabilities, options, or assets. *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984). However, a review of the case finds that the only effect the outcome of the dispute between the Bennetts and the Defendants could have is to give rise to a claim by the Bennetts against the Debtor-In-Possession. As a practical matter, the estate of the Debtor-In-Possession has been fully liquidated and distributed pursuant to the Plan of Reorganization. There appears to be no estate which can be materially affected by the outcome of the dispute.

■ Furthermore, the action presently before the Court seeks to have an injunction issued by this Court against the Defendant's actions against the Bennetts. It does not, in and of itself, seek an adjudication of the merits of whether or not the Bennetts are liable to the Defendant. That alleged liability arises from the provision which places the Bennetts in the position of statutory guarantors for the Debtor-In-Possession's tax obligations. The question of their liability and the issuance of an injunction to prevent the Defendant from enforcing that which it is otherwise entitled to do is not a matter which substantially effects the rights of the estate. Therefore, in the absence of such effect, it cannot be said that the outcome of the dispute is "related" to a case under Title 1 within the context of the rule set forth in *Pacor, Inc. v. Higgins,* supra. Accordingly, it must be concluded that the Plaintiffs' argument on this point is without merit.

Although it has been determined that the dispute between these parties is not a matter directly related to a Title 11 proceeding, the Court recognizes that there exist circumstances where litigation between parties not presently before the Court have a bearing on bankruptcy proceedings. Such circumstances often arise where, as in the present case, a creditor may seek satisfaction of a debt from both the debtor and a third party guarantor. Where the obligation is of a substantial or nondischargeable nature, the creditor has the ability to exert pressure on the debtor for payment by threatening collection from the co-debtor.

The question of whether the Bankruptcy Court is empowered to enjoin actions by creditors against third parties has been a matter of significant prior litigation. It does not appear that there have been uniform resolutions to this question. *See, Bostwick v. United States (Matter of Bostwick),* 521 F.2d 741 (8th Cir.1975), *J.K. Printing Service, Inc. v. United States (J.K. Printing Service, Inc.),* 49 B.R. 798 (Bkcy.W.D.Va.1985), *Steel Products, Inc. v. United States (In re Steel Products, Inc.)* 47 B.R. 44 (Bkcy.W.D.Wash.1984), *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 21 B.R. 777 (Bkcy.D.N.M.1982), *but see, United States v. Huckabee Auto Co.,* 46 B.R. 741 (M.D. Ga.1985), *Goodman v. United States (In re Pierce Coal and Const., Inc.),* 49 B.R. 779 (Bkcy.N.D.W.Va.1985), *In re Sondra, Inc.,* 44 B.R. 205 (Bkcy.E.D.Pa.1984). However, it does appear that the Courts have fashioned a test for determining whether or not jurisdiction exists to issue such an injunction. That test addresses the question of whether or not the absence of an injunction would detrimentally influence the debtor through pressure on the third party, or whether the creditor's pressure would jeop-

ardize the reorganization effort. *See, Otero Mills, Inc. v. Security Bank & Trust,* supra, *In re Sondra, Inc.,* supra. Where jurisdiction has been found, it is premised on the authority of 11 U.S.C. Section 105, and is justified on the grounds that creditors should not be able to accomplish indirectly that which the automatic stay precludes them from accomplishing directly. *Otero Mills, Inc. v. Security Bank & Trust,* supra.

In applying this test to the present case, it does not appear that this Court may invoke jurisdiction over the Defendant. As has been previously indicated, the Debtor-In-Possession's estate has been fully liquidated and distributed under the plan. In making that distribution, the claims were paid as allowed in the case and as required by 11 U.S.C. Section 101 *et seq.* The plan has been completed and the case has been administratively closed. Although it is unclear whether or not the Debtor-In-Possession has been officially dissolved, it appears that the only remnant of the Debtor-In-Possession is the corporate shell. In light of the absence of a viable entity with any material or consequential value, it cannot be said that the issuance of an injunction against the Defendant will have any effect on the Debtor-In-Possession or its estate. Without the potential for such a result, it must be concluded that the Court has no ground upon which to enjoin the Defendants from pursuing its assessment.

Although the Plaintiffs have argued that there was a total resolution of the disputed tax liabilities during the course of the Chapter 11 case, the consummation of such an agreement is not made evident from the record. Even if such a resolution were apparent, it does not appear that it would give rise to an accord and satisfaction defense in subsequent litigation between the parties. However, that defense cannot be the grounds upon which this Court should grant the relief sought in the Complaint. Therefore, it must be concluded that the Complaint should be dismissed.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Motion To Dismiss be, and is hereby, GRANTED.

It is FURTHER ORDERED that the Complaint be, and is hereby, DISMISSED.