**In re RIVER FAMILY FARMS, INC., Debtor.**

**RIVER FAMILY FARMS, INC., Plaintiff,**

**v.**

**FEDERAL LAND BANK OF OMAHA and Robert P. Lyons, Defendants.**

**Bankruptcy No. 86–02732D.**
**Adv. No. 87–0260D.**

United States Bankruptcy Court, N.D. Iowa.

Dec. 18, 1987.

Joseph A. Peiffer, Cedar Rapids, Iowa, for debtor.

Carol F. Dunbar, Waterloo, Iowa, trustee.

John Titler, Cedar Rapids, Iowa, for Federal Land Bank of Omaha.

Carl Miller, Maquoketa, Iowa, for Robert Lyons.

## MEMORANDUM OF DECISION AND ORDER

*Denying Injunctive Relief*

MICHAEL J. MELLOY, Chief Judge.

The matter before the Court is the complaint for injunctive relief filed by River Family Farms, Inc. (Debtor). The Court, having reviewed the testimony, pleadings, and briefs of counsel, makes the following Findings, Conclusions, and Order pursuant to Fed.R.Bankr.P. 7052. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O).

### FINDINGS AND CONCLUSIONS

The Debtor is a farm corporation engaged primarily in the business of custom feeding cattle. Alfalfa and corn grown by the Debtor are used to feed the cattle. The corporate officers, members of the board of directors, and principal shareholders of the Debtor are Ross and Vivian River. They hold greater than 90 percent of the corporate stock.

Ross River, the president and treasurer of the Debtor, works for the corporation approximately thirty hours per week. He is involved in acquiring custom cattle, marketing the cattle, and maintaining buildings and facilities. He receives no wages from the corporation for his services. Vivian River is the vice-president and secretary of the Debtor. She works for the corporation approximately 15 to 30 hours per week. Her duties include bookkeeping and preparing noon meals for the permanent and part time help. She also receives no compensation from the corporation for her services.

Bruce and David River, the sons of Ross and Vivian River, are responsible for the majority of the day-to-day labor involved in operating the Debtor. Their duties include planting and harvesting crops, producing and processing feed, feeding cattle, and

maintaining and repairing machinery. Bruce and David are each paid a salary of $175 per week, and they work between 40 and 70 hours per week. Additionally, Bruce and David are in business together as River Brothers. They rent ground and hog facilities from the Debtor for their "farrow-to-finish" hog operation.

Ross River Farm Services, Inc. (RRFS), a service corporation, is a wholly owned subsidiary of the Debtor. As of July, 1987, RRFS had a value of less than $5,000. The income from RRFS is used to pay the living expenses of Ross and Vivian River.

The Debtor filed a petition under Chapter 12 of the Bankruptcy Code on December 12, 1986. Its Plan of Reorganization was confirmed by this Court on June 11, 1987. At the time of the filing of its petition, the Debtor was indebted to the Federal Land Bank of Omaha (FLB) in the total amount of $688,546.50. Ross and Vivian River, as individuals, pledged personal assets (their home and a second parcel of land called the Gilmore Farm), as well as corporate assets, as security for the FLB debt. The Debtor defaulted on the FLB loan and a foreclosure action was commenced in state court. During the pendency of the Chapter 12 case, the automatic stay was modified to permit the FLB to continue its pre-petition foreclosure action on the two tracts of land individually owned by Ross and Vivian River and pledged as security to the FLB. Judgments were obtained by the FLB against Ross and Vivian River and the Debtor in the amounts of $584,789.13 and $103,757.37.

The two parcels of land previously owned by Ross and Vivian River were sold on or about May 14, 1987, by defendant Robert P. Lyons pursuant to an execution on the judgment. The FLB was precluded from executing on the corporate judgment due to the Debtor's filing of the bankruptcy petition. A deficiency judgment was obtained against Ross and Vivian River, and in partial satisfaction of this, the FLB executed on the stock of the Debtor and RRFS. A Sheriff's Sale was scheduled for Monday August, 17, 1987, at 10:00 a.m. A temporary injunction was issued by this Court on August 13, 1987.

If the stock of the Debtor and RRFS is sold by the FLB, it is not likely that Ross, Vivian, David and Bruce River will continue to work for the Debtor and/or RRFS. The reorganization efforts of the Debtor will be compromised by the sale of the stock.

## DISCUSSION

The Debtor requests that the Court grant a permanent injunction enjoining the FLB from its collection efforts against Ross and Vivian River, or in the alternative, a limited permanent injunction to enjoin the FLB from executing on the stock of the Debtor and RRFS. In addition to its plea for injunctive relief, the Debtor requests that the Court enter an order directing the FLB to show cause why it should not be held in contempt for directing the Sheriff to execute upon the corporate stock in violation of 11 U.S.C. § 362(a)(3). The FLB asks that the Debtor's complaint be dismissed, with reasonable costs and attorney fees awarded to the FLB. Additionally, the FLB asks that confirmation of the Debtor's Chapter 12 Plan be rescinded and discharge denied because of false oaths allegedly made during the Chapter 11 and Chapter 12 proceedings.

At the outset, enforcement actions of the FLB are not restrained by the automatic stay as 11 U.S.C. § 362 stays actions against the debtor and actions to obtain possession of property of the estate. The FLB is not pursuing an action against the Debtor nor is the FLB attempting to obtain possession of any property of the estate of the Debtor. Therefore, the Debtor's request for an order directing the FLB to show cause why it should not be held in contempt for violation of 11 U.S.C. § 362 is without merit.

The Court's power to stay actions of creditors against non-debtors is derived from 11 U.S.C. § 105 which states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". It has been clearly established that bankrupt-

cy courts may enjoin actions against guarantors, sureties, and other co-defendants of the debtor in appropriate circumstances. *In re A.H. Robins Company, Inc.,* 788 F.2d 994 (4th Cir.1986); *In the Matter of Rustic Manufacturing, Inc.,* 55 B.R. 25 (Bankr.W.D.Wis.1985); *In re Lahman Manufacturing Co., Inc.,* 33 B.R. 681 (Bankr.D.S.D.1983); *In re Otero Mills, Inc.,* 21 B.R. 777 (Bankr.D.N.M.1982); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bankr.E.D.N.Y.1980). The question becomes whether such an order is necessary or appropriate under the circumstances of the case. *In the Matter of Dore & Associates Contracting, Inc.,* 54 B.R. 353, 357 (Bankr.W.D.Wis.1985).

 The power to enjoin creditors' actions against a co-debtor or guarantor should only be used in limited circumstances where a determination is made that failure to so enjoin would adversely affect the bankruptcy estate and pressure the debtor through that third party. *Otero Mills,* 21 B.R. at 778. In this case, the Court issued a preliminary injunction on August 13, 1987. "[A] preliminary injunction ... is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or conclusive, characterized by its for-the-time beingness." *Dore & Associates,* 54 B.R. at 360 quoting *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (2d Cir.1953). Preliminary injunctions are frequently issued before any meaningful examination of the merits of the case has been made. "The purpose and sole function of a preliminary injunction is to preserve the status quo ..." *Dore & Associates,* 54 B.R. at 360. Therefore the Court may, at any time prior to the entry of a final judgment, modify a preliminary injunction if it is warranted by the facts of the case. *Id.* Thus, this Court must now decide whether there is a basis to continue the preliminary injunction, dissolve the injunction, or issue a permanent injunction.

The traditional test for preliminary injunctive relief requires the Court to consider the following four factors: (1) whether the movant will have an adequate remedy

at law or will be irreparably harmed if a preliminary injunction is not issued; (2) the reasonable likelihood that the movant will succeed on the merits; (3) the balance of likely harm as between the movant and other parties; and (4) the public interest. *Dore & Associates,* 54 B.R. at 357; *Otero Mills,* 21 B.R. at 779; *Rustic Manufacturing,* 55 B.R. at 30.

Ross and Vivian River, as well as David and Bruce River, have testified that they will cease working for the Debtor if the stock is sold to a third party. Ross and Vivian River receive no wages from the Debtor and it is unlikely that the subsequent purchaser would find employees who are willing to perform their work for free. Therefore, the Debtor is being deprived of services which it otherwise would have had if injunctive relief were to be granted. Additionally, David and Bruce River have testified that they do not receive adequate wages for the work they perform and if an injunction is not issued, the Debtor would be deprived of this favorable rate for labor. If the purchaser of the Debtor were to have to pay additional wages to operate the corporation, the reorganization efforts would likely be adversely affected.

 It has been held that "the adverse influence must be such to effectively pressure the debtor through a third party to accomplish indirectly what the creditor may not accomplish directly." *In re Juneau's Builders Center, Inc.,* 57 B.R. 254, 258 (Bankr.M.D.La.1986). In other words, the debtor must show that the creditor is not pursuing its legitimate right to collect on its judgment from the guarantors, but is using the action to unduly pressure the debtor. *Id.* It is not enough to merely allege that the action against the third party will adversely affect the debtor. In this case, while the Debtor may be adversely affected by the sale of the stock owned by Ross and Vivian River, there is no indication that FLB is doing more than pursuing its legitimate right to collect on its debt.

Additionally, Ross and Vivian River do have an adequate remedy at law, i.e., they could file their own bankruptcy petition. *In re O.H. Lewis Co., Inc.,* 40 B.R. 531

(Bankr.D.N.H.1984). The automatic stay effected by § 362, as well as other provisions of the Bankruptcy Code, provide safeguards for both debtors and creditors alike. The debtor must disclose all financial information and the creditor is allowed to participate in the proceedings under full disclosure by the debtor. Invoking the jurisdiction of the bankruptcy court assures commitment of the debtor's assets to the satisfaction of his obligations, thereby justifying the extraordinary effect of prohibiting the creditors pursuit of self-interest. *Juneau's Builders Center*, 57 B.R. at 256. Absent such control over the beneficiary of a stay and the beneficiary's assets, the potential for misconduct is substantial. *Id.* Injunctive relief granted pursuant to § 105 which stays actions against third parties is devoid of the protection afforded by the Bankruptcy Code. *Id.* Therefore, § 105 injunctive relief in this type of situation should be granted only in extraordinary circumstances for limited time periods.

The Debtor cites *In re Northlake Building Partners*, 41 B.R. 231 (Bankr.N.D.Ill. 1984) for the proposition that the third party guarantor cannot be forced into bankruptcy by the debtor, and therefore there is not an adequate remedy at law available to the Debtor. While this argument does have some validity, the facts between that case and the case at bar are distinguishable. In *Northlake,* the debtor did not have a confirmed plan and the preliminary injunction was granted until such time as a plan was confirmed. It is not clear what the result would have been if the plan did not provide for payment of the debt sought from the third party guarantor. In fact, most bankruptcy courts granting preliminary injunctive relief have done so in the interim of the filing of the petition and getting a plan confirmed. *In re Monroe Well Service, Inc.,* 67 B.R. 746 (Bankr.E.D. Pa.1986); *In re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr.D.Utah 1985); *In re Lahman Manufacturing Co., Inc.,* 33 B.R. 681 (Bankr.D.S.D.1983); *Otero Mills, Inc.,* 21 B.R. 777 (Bankr.D.N.M.1982).

This Court could find no relevant cases where a permanent injunction was granted *post confirmation* of a debtor's plan of reorganization. The two courts which granted permanent injunctions *pre-confirmation* did so conditionally. *Lahman Manufacturing,* 33 B.R. at 685 (Parties could request opportunity to submit additional evidence prior to conversion date of preliminary injunction into permanent injunction); *Otero Mills,* 21 B.R. at 779 (If the debtor failed to file plan within the required time or if the plan was not approved, the creditor could apply to have the injunction lifted). In both of those cases, the courts placed heavy reliance upon the assertion that the personal guarantors, who had requested the injunction, would sell personal assets and contribute the funds to the debtor corporation. Both courts were concerned that all creditors be given the opportunity to share in the proceeds from the sale of personal assets. Ross and Vivian River had made no similar pledge of personal assets to fund the corporate reorganization.

In the case at bar, the Debtor is operating under a confirmed Plan of Reorganization. The Plan does not provide for payment of the debt owed individually by Ross and Vivian River. The Bank should not be prohibited from collecting on its judgment unless Ross and Vivian River individually file their own bankruptcy petition.

The second factor, the probability that the movant will succeed on the merits, has been interpreted in the bankruptcy context to mean that the guarantor must show that the debtor's plan, when confirmed, would provide for 100 percent payment of the underlying debt. *Larmar Estates,* 5 B.R. at 331. In this case, the Debtor has a confirmed plan which does not provide for payment of any of the debt which FLB is seeking to collect from Ross and Vivian River.

The third factor requires the Court to compare the relative harm between the Debtor and the objecting creditor. It is clear that the reorganization efforts of the Debtor under its confirmed plan will be adversely affected in the absence of injunctive relief. On the other hand, the FLB's right to pursue collection on its judgment will be adversely affected by the issuance

of an injunction. As bankruptcy policies in general favor the reorganization process, this factor would likely be weighed in favor of the Debtor. *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr.W.D.Mo.1980).

The last factor requires a balancing of the public interest in successful reorganizations with other competing social interests. It is certainly in the public interest to allow small businesses to reorganize, however, property and contract rights of creditors afforded by state laws must also be protected. *Monroe Well Service*, 746 B.R. at 756. Since the Debtor has failed to satisfy the first two requirements, and consideration of the remaining factors offers no compelling reasons to override the former, the Court must decide in favor of dissolving the preliminary injunction and dismissing the complaint. Furthermore, the Court is aware of no authority to grant the relief requested by the Debtor.

The FLB has asked that the Court rescind confirmation of the Debtor's Chapter 12 Plan and deny a discharge because of false oaths allegedly made during the Chapter 11 and Chapter 12 proceedings. Specifically, the complaint filed by the Debtor claims that all of the stock of RRFS is owned by the Debtor which is allegedly contrary to statements made under oath by officers of the Debtor in their Statement of Affairs & Schedules filed in their Chapter 11 and Chapter 12 proceedings. In light of this Court's decision dissolving the injunction and dismissing the Debtor's complaint, if the FLB wishes to pursue this allegation, an evidentiary hearing will be set upon request.

### ORDER

IT IS ORDERED that the preliminary injunction enjoining the Federal Land Bank from collecting on its judgment against Ross and Vivian River is dissolved.

IT IS FURTHER ORDERED that the Debtor's complaint for a permanent injunction is dismissed with each party to bear its own costs.